# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

IN RE:

NEW CENTURY TRS HOLDINGS, INC., et al.,
a Delaware Corporation,

                Debtor.

LESLIE MARKS,

                Plaintiff,

    vs.

NEW CENTURY TRS HOLDINGS, INC., a
Delaware Corporation, et al.

                Debtors

CASE NO. . 07-104-16 KJC, and Related
Actions, Jointly Administered

CHAPTER 11

ADVERSARY PROCEEDING
CASE NO.: 09-50244

RELATED CASES:
USDC NDC Case No: C06-06806 SI

FILED
2009 APR 28 AM 10: 27
US BANKRUPTCY COURT
DISTRICT OF DELAWARE
CLERK

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S OPPOSITION TO THE NEW CENTURY LIQUIDATING TRUST'S MOTION TO DISMISS AND REQUEST FOR SANCTIONS

Submitted by: Leslie Marks in Pro SE
Dated:         April 26, 2009

# APPENDIX

# MEMORANDUM IN OPPOSITION

## TABLE OF CONTENTS                                    PAGE

I.     PRELIMINARY STATEMENT ................................................................ 1

II.    MOTION TO DISMISS IS UNTIMELY; CERTIFICATE
      OF SERVICE CONTAINS DEFECTS ............................................. 1

III.   MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM FAILS ....... 1

IV.   PLAINTIFF STATES SEVERAL CLAIMS TO
      WHICH RELIEF CAN BE GRANTED BY THIS COURT ............................ 8

V.     ARGUMENT ......................................................................................... 11

VI.   CONCLUSION ...................................................................................... 18

## TABLE OF AUTHORITIES                                 PAGE

### BANKRUPTY CASES

In re Albany Partners, Ltd F.2d 670 (11th Cir. 1984) ........................................ 17

In re Arnold, 806 F.2d 937, 939 (9th Cir. 1986) ................................................. 17

In re Bingham, 68 Bankr. 933, 935 (Bankr. M.D.Pa. 1987) ...................... 13, 16

In re Bolton, 43 Bankr. 48 (Bankr.E.D.N.Y. 1984); .......................................... 16

In re Eighty South Lake, Inc., 63 Bankr. 501 (Bankr.C.D.Cal. 1986) ............. 17

In re Goeb, 675 F.2d 1386, 1391 (9th Cir. 1982) .............................................. 14

In re Grieshop, 63 Bankr. 657, 663 (N.D.Ind. 1986. .......................................... 13

In re Holi-Penn, Inc., 535 F.2d 841, 844 (3d Cir. 1976) .................................... 16

In re Khan, 34 Bankr. 574, 575 (Bankr.W.D.Ky. 1983 ..................................... 15

In re Kemble, 776 F.2d 802, 807 (9th Cir. 1985) ............................................... 17

In re Kinney, 51 Bankr. 840, 845 (Bankr.C.D.Cal. 1985) ................................. 13

In re Lawson, 93 Bankr. 979, 986 (Bankr.N.D.Ill. 1988) .................................. 13

In re Lewis, 79 Bankr. 893, 896 (9th Cir. BAP 1987) ....................................... 18

## BANKRUPTCY CASES Cont'd

In re Loeb Apartments, Inc., 89 F.2d 461 (7th Cir. 1937) ................................................ 17

In re McElveen, 78 Bankr. 1005, 1007 (Bankr.D.S.C. 1987) ......................................... 16

In re McKissie, 103 Bankr. 189, 194 (Bankr.N.D.Ill. 1989) ........................................... 18

In re Metz, 820 F.2d 1495 (9th Cir. 1987) ........................................................................ 14

In re Natural Land Corp., 825 F.2d 296 (11th Cir. 1987) ................................................ 17

In re Nelson, 66 Bankr. 231, 234 (Bankr.D.N.J. 1986) ................................................... 17

In re Phoenix Piccadilly, Ltd., 849 F.2d 1393 (11th Cir. 1988) ...................................... 17

In re Pryor, 54 Bankr. 679, 681 (Bankr.D.S.C. 1985) .................................................... 16

In re Rimgale, 669 F.2d 426, 431 (7th Cir. 1982). ............................................... 12, 13, 14

In re Rye, 54 Bankr. 180, 182 (Bankr.D.S.C. 1985) ........................................................ 17

In re Setzer, 47 Bankr. 340, 344 (Bankr. E.D.N.Y. 1985)). ................................. 13, 15, 16

In re Smith, 848 F.2d 813, 818 (7th Cir. 1984) .......................................................... 13, 14

In re Terry, 630 F.2d 634 (8th Cir. 1980) .................................................................. 13, 14

In re Victory Construction Co., Inc., 9 Bankr. 549 (Bankr.C.D.Cal. 1981) .............. 15, 17

In re Webre, 88 Bankr. 242, 245 (9th Cir. BAP 19880....................................................... 17

In re Villa Madrid, 110 Bankr. 919 (9th Cir. BAP 1990)............................................... 8, 18

In re White, 72 Bankr. 169 (Bankr.D.S.C. 1986) ........................................................... 16

In re Yukon Enterprises, Inc., 39 Bankr. 919, 921 (Bankr.C.D.Cal. 1984) .............. 16, 17

In re Zahniser, 58 Bankr. 530 (Bankr.D.Colo. 1986). .................................................... 13
Matter of Little Creek Development Co., 779 F.2d 1068 (5th Cir. 1986) ...................... 17

**FEDERAL CASES**            **PAGE**

Conley v. Gibson,
  355 U.S. 41, 45-46, 2 L.Ed. 2d 80, 78 S. Ct. 99 (1957) ................................. 11
EEOC v. St. Francis Xavier Parochial Sch,
  326 U.S. App. D. C.. 67, 117 F.3d 621, (D.C. Cir. 1997) ............................... 11
Kowal v. MCI Communications, Corp.,
  305 U.S. App. D.C. 60, 26 F.3d 1271, 1276 (D.C. Cir. 1994) ...................................... 11
Tele-Communications of Key West, Inc. v. United States,
  244 U.S. App. D.C. 335, 757, F.2d 1330, 1334-35 (D.C. Cir. 1985) ............................ 11
Thornton v. Wahl,
787 F. 2d 1151 (7th Cir. 1986) ........................................................................ 18


United States v. Gomez-Vigil, 929 F.2d 254, 257 (6th Cir. Mich. 1991) ........................... 7
United States v. Grey, 56 F.3d 1219, 1222 (10th Cir. Kan. 1995)..................................... 6
United States v. Key, 859 F.2d 1257, 1260 (7th Cir. Ind. 1988) ........................................ 6
United States v. Lindholm, 24 F.3d 1078 (9th Cir. Cal. 1994)........................................ 6
United States v. Yagow, 953 F.2d 427, 431 (8th Cir. N.D. 1992) ..................................... 6
Waldron, 785 F.2d at 941. .............................................................................................. 13


**FEDERAL RULES**            **PAGE**

FRCP 12(b) ....................................................................................................................... 1
FRCP 503 .......................................................................................................................... 1
11 U.S.C. Rule 9011, ............................................................................................... 17, 18
18 USCS § 156.................................................................................................................. 2
18 USCS § 152 ...................................................................................................... 3, 4, 5, 6, 7
18 USCS § 158.................................................................................................................. 5

## PRELIMINARY STATEMENT

Plaintiff Leslie Marks (hereinafter "Plaintiff" or "Marks") respectfully submits this Opposition to New Century Liquidating Trust's (hereinafter "NCLT") Motion to Dismiss. NCLT's motion to dismiss is untimely, made in bad faith in an attempt to seek more time to answer Plaintiff's complaint, or otherwise delay Plaintiff's right to due process, and prolongs the suffering of Marks in this unfair, unjust subprime lending debacle. Plaintiff seeks relief from Defendants as well as their Defendant's Motion to Dismiss with prejudice. Plaintiff seeks sanctions as provided by law, or in the alternative as this Court deem just and proper.

## NCLT'S MOTION TO DISMISS IS UNTIMELY, SERVICE DEFECTS

A motion to dismiss under FRCP 12(b) must be made within 20 days of receipt of the summons and complaint. The Complaint was served by mail on February 27, 2009. NCLT's Motion to Dismiss was allegedly served on April 17, 2009. Furthermore, the Proof of Service signed by Elizabeth A Sloan is improper, insufficient, and legally invalid. It does not clearly state the method of service and there is NO declaration under penalty of perjury, as is standard language in a Proof of Service. There is also no indication where she is located nor to whom she is employed, therefore, it cannot be reasonably determined what is "local" and what is not "local". As such, this service is defective. A true and correct copy of that Proof of Service is attached to the Declaration of Leslie Marks (hereinafter "Decl. of Marks") as Exhibit A. Additionally, the Proof of Service signed by Jamie L. Edmonson does not contain a service list, or a declaration of service under penalty of perjury. See Decl. of Marks Exhibit C. Again, Plaintiff declares under penalty of perjury that she did NOT receive any orders or other documents during this litigation that contained, listed, represented, outlined or described her primary homestead residence. As such, Plaintiff Marks must deem these services as defective, or in the alternative invalid under FRCP 503.

## NCLT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM FAILS

Plaintiff has a valid claim, and to the best of her knowledge and believe that claim

is pending. See Decl. of Marks Exhibit B. Defendants claim that Plaintiff's claim was expunged by this Courts Order, and fail to provide evidence of a signed order of this Court, relating specifically to Plaintiff's claim. Furthermore, NCLT requested a W-9 form from Plaintiff well after it alleges, this Court dismissed her claim. As such NCLT's motion to dismiss fails. Plaintiff has alleged viable causes of action and relief can be granted to Plaintiff by this Court. Plaintiff alleges that Defendants acted with Knowing Disregard of Bankruptcy Law/Rule, *18 USCS § 156*. Plaintiff alleges and continues to allege that NCLT intentionally and fraudulently transferred her property to OCWEN (*See*, USDC NDC 07-2133 SI) on or about March 27, 2007 with an Effective Date of Transfer of April 2, 2007. This transfer was to steal Plaintiff's primary residence and homestead, which was in active litigation (USDC NDE 06- 06806) at the time of transfer. This transfer was also an unlawful attempt to exclude her property from the bankruptcy proceedings in this Court, DB Structured Products, hereinafter "DB" had an active claim AND an formal pleading filed in this Court against NCLT at the time. NCLT and DB sought to conceal Plaintiff's property from the bankruptcy proceeding and become unjustly enriched completing a "side deal" outside of the bankruptcy law and without the assistance of NCLT's then Counsel of Record. NCLT and DB attempted to hide existence and conceal from this court activities in related litigation, which commenced approximately one year prior to NCLT filing Chapter 11. The wrongful transfer was attempted NOT by NCLT's then counsel of record, but by NCLT (on it's letterer head) and OCWEN (in it's letterhead envelope. *See*, Decl, of Marks Exhibit E attached hereto.) NCLT, DB and OCWEN acting jointly, with clear intent to circumvent federal law, bankruptcy law and wrongfully contacting Marks by means other than through their counsel of record. The wrongful transfer violates RESPA, TILA and bankruptcy law, and to avoid providing Plaintiff due process in the related Case No. USDC NDC 06-06806, which became stayed when NCLT became protected by the Automatic Stay to escape Federal and SEC prosecution. NCLT could not transfer property 90 days prior to filing Chapter 11. This fraudulent transfer violates bankruptcy law and

other laws. The knowing disregard of bankruptcy laws or rules is a Class A misdemeanor, punishable by a fine of up to $100,000, a term or imprisonment of not more than one year, or both.

As Plaintiff has alleged in the related case USDC NDC 06-06806, New Century sent a Notice of Transfer dated March 27th, 2007 with an effective date of April 2, 2007, stating transfer to OCWEN (NOT DB (DB Structured Products, hereinafter "DB") as stated in the NCLT Motion to Dismiss) – on the SAME DATE they filed for protection from the automatic stay. NCLT was represented by the law firm of Wolf and Wyman and did not contact plaintiff via their counsel of record. NCLT attempted to make the transfer one day before they filed Chapter 11. In bold violation of Bankruptcy law, the same law in which it sought refuge from its numerous allegations of mortgage fraud from federal agencies as well as the SEC. NCLT failed to provide Marks with the 15 day Notice of Transfer as required by RESPA and is clearly apparent on the face of the document (See Decl. of Marks Exhibit E attached hereto).

Plaintiff alleges that NCLT transferred her property in violation of Transferring or Concealing Property, *18 USCS § 152(7)*. The crime of transferring or concealing property is a Class D felony punishable by five years in prison, a fine up to $250,000, or both. NCLT's Motion to Dismiss on page 5 lines 1 through 5, NCLT admits transferring the property, but fails to provide evidence or proof of the alleged July 13, 2006 alleged transfer nor provides evidence that the notice was property served on Marks. If this was a fact, why then was not the Court and Marks notified in the related case USDC NDC 06-06806 notified of such transfer? Why has Plaintiff received no loan servicing or invoicing subsequent to the unlawfully NOTICED transfer which is evidenced by Ex. E attached hereto. Marks must believe and therefore allege these statements are untruths. NCLT attached no exhibit to support or prove such transfer. Even if the transfer was actually made as stated and made in "good faith" Marks should have received a Notice of Transfer as required by RESPA at that time. No such Notice of Transfer was received, as such the

Transfer was defective. Additionally, NCLT admits it was not allowed to transfer Marks' property until April 14, 2006. Why then, would it take a year to give her notice under RESPA? In any event, Marks invites NCLT to prove that it did transfer the loan on April 14, 2006. If that is in fact the case, NCLT would not have serviced the loan as to April 14, 2006 not March 30, 2007 as alleged, in clear bad faith. The only servicing Plaintiff has received is from NCLT and that ended on April 2, 2006. Marks alleges and continues to allege that the initial transfer from NCLT to OCWEN or DB was in violation of RESPA, bankruptcy law and other laws.

NCLT transferred Marks' property effective April 2, 2007, the same date it filed for Chapter 11 with this Court. NCLT admits it made the transfer and falsely represents a false date of transfer. See Decl. of Marks Exhibit B. Marks requests this Court take Judicial Notice of Exhibit B.

Plaintiff alleges that NCLT committed Bankruptcy Fraud, *18 USCS § 157*. The elements of bankruptcy fraud are: 1. a part of a scheme to defraud; 2. a person must file a bankruptcy petition under Title 11; 3. file a document in a proceeding under Title 11; 4. or make a false or fraudulent representation, claim, or promise that relates to a Title 11 proceeding; 5. and the action must be fraudulently undertaken. Frauds that only incidentally or legitimately involve bankruptcy will be within the broad reach of this section. Even if a bankruptcy or a document in a bankruptcy is legitimately or justifiably filed, a crime will be committed if it is part of the overall scheme to defraud. A debtor that intentionally attempts to make illegitimate claims of exemption risks being charged of bankruptcy fraud under this section. The jurisdictional act is to be for the purpose of executing or concealing a scheme to defraud. The jurisdictional act, the filing or the false representation, need not be the primary act necessary to complete the fraud. The term document covers a broad range of possible filings, from motions to required statements of assets and liabilities. The term also covers notices and statements required by professionals and others as to their interest in the estate. Since there is no requirement that the document

be signed, it will cover essentially everything that will appear on the bankruptcy court's docket. The crime of bankruptcy fraud is a Class D felony, punishable by up to five years in prison, a fine of up to $250,000, or both.

Designation of Individuals to Address Abusive Reaffirmations and Fraudulent Statements in Bankruptcy Schedules, *18 USCS § 158.* Legislation has been enacted to address abusive reaffirmations of debt and materially fraudulent statements in bankruptcy schedules. Under *18 USCS § 158,* the United States attorney general shall designate a United States attorney for each judicial district and an agent of the Federal Bureau of Investigation for each field office to have primary responsibility in carrying out enforcement activities in addressing violations of section 152 or 157 *18 USCS § 152* or *18 USCS § 157* relating to abusive reaffirmations of debt. The individuals shall also address violations relating to materially fraudulent statements in bankruptcy schedules that are intentionally false or intentionally misleading.

Concealment of Assets, *18 USCS § 152(*1). For the crime of concealment of assets to exist there must be: 1. concealment; 2. from a court officer or from creditors; 3. of a bankruptcy debtors estate; 4. done knowingly and fraudulently. The statute prohibits hiding assets from bankruptcy officers and actively frustrating collection efforts by creditors. The statute also covers taking steps to mislead court officers as to the ownership of assets. Inaction may also be a violation as well if an independent duty to disclose is present. If a debtor knowingly and fraudulently resorts to vague descriptions of property by relying on generic rather than readily available descriptions this action can constitute concealment. The statute is not restricted to acts or inaction taken by debtors it also applies to a debtors business associates, confederates, and attorneys. Concealment is likely the easiest element to prove as it can be proved by introducing evidence of ownership of a particular asset together with the debtor's schedules that do not include evidence of ownership of that asset.

To sustain this allegation, the debtor must conceal estate property knowingly and

fraudulently. An act is done knowingly if it is done intentionally. An act is also done knowingly if the defendant is aware of the act and does not act, or fails to act, through ignorance, mistake, or accident. A debtor acts fraudulently if an act is done with the intent to deceive or cheat parties affected by the bankruptcy case. An intent to defraud is a frame of mind far beyond a desire to avail oneself of the benefits of the bankruptcy laws. This knowing and fraudulent behavior is common to most of the bankruptcy crimes. See Decl. Marks Exhibit E.

Plaintiff alleges that NCLT and its Trustee of Making a False Oath or Account, *18 USCS § 152(2)*. The term account generally refers to a reconciliation of financial activities, which are common in bankruptcy. The materiality of the oath or account is not required by the statute. However, courts have engrafted that element into the crime. *See United States v. Key, 859 F.2d 1257, 1260 (7th Cir. Ind. 1988); United States v. Lindholm, 24 F.3d 1078 (9th Cir. Cal. 1994); United States v. Grey, 56 F.3d 1219, 1222 (10th Cir. Kan. 1995); United States v. Yagow, 953 F.2d 427, 431 (8th Cir. N.D. 1992).* Materiality only requires that the false oath or account relate to a significant aspect of the bankruptcy case in which it was given, or pertain to the discovery of assets, or to the debtors financial transactions. As NCLT omitted Marks' property in their Chapter 11 filing, wrongfully transferred it to OCWEN and misrepresents to this Court the factual events of its acts, Marks must allege that the accounting by NCLT is faulty, malicious and made in bad faith. Marks reminds this court that to date, NO defendant nor their cohorts, have been servicing her mortgage, which was in active litigation and dispute since its inception in June 2006. NCLT admits that while the loan was in active litigation and default NCLT transferred it to DB Structured Products (fails to provide Notice of Transfer of any kind to support this fraudulent claim.) Furthermore, the documents offered by NCLT MUST be fraudulent as NCLT claims to have Transferred the Property in 2006, there would be no reason to include the Subject Property in any orders entered in 2008, if the issues raised in NCLT's Motion to Dismiss were even remotely factual or made in good faith.

To satisfy the requirement that a statement is made fraudulently and knowingly, the plaintiff must establish that the testimony was given for the purpose of deceit or misinformation. The crime is a Class D felony punishable by five years in prison, a fine of up to $250,000 or both. Plaintiff alleges that NCLT and its Trustee of Making a False Declaration, *18 USCS § 152(3)*. The elements for the bankruptcy crime of making a false declaration include: 1. a declaration, certificate, verification, or other statement made under penalty of perjury; 2. or in relation to a bankruptcy case under Title 11; 3. that is false; 4. material; 5. knowingly and fraudulently made. According to the evidence provided by Marks, all of the above elements have been met. NCLT provides that it provided mortgage services to Marks within two years, admonishes her for numerous refinancing, and yet APPROVED the 2006 Loan. Too bad for Plaintiff NCLT was not as diligent in 2006. This section also covers documents that are submitted in districts that permit affidavits in lieu of live testimony. *See, United States v. Gomez-Vigil, 929 F.2d 254, 257 (6th Cir. Mich. 1991)*. The crime of making a false declaration is a Class D felony punishable by five years in prison, a fine up to $250,000, or both.

Plaintiff alleges that NCLT is guilty of Receiving Property From Debtor with Intent to Defeat Provisions of Title 11, *18 USCS § 152(5)*. It should be noted that DB had a claim filed against New Century and a formal complaint on file in this matter during the time of Marks allegation. The statute seeks to criminalize those who act in concert with a debtor to evade the distribution scheme set forth in Title 11 by requiring the receipt of the property. The property must be of the estate and the receipt must occur after the debtor has filed his bankruptcy petition. It also includes certain property to which the debtor or the estate becomes entitled after commencing the case. The Fifth Circuit determined in *United States v. Gibbs, 594 F.2d 125 (5th Cir. Fla. 1979)* that the provisions of Title 11 are defeated when a person acts in a manner that diminishes the debtors estate without court approval interfering with the equitable distribution of any material part of the estates assets. It is for the trier of fact to determine whether or not the property is material as that

is a factual question. The crime of receiving property from a debtor with the intent to defeat the provisions of Title 11 is a Class D felony punishable by five years in prison, a fine up to $250,000, or both. Here NCLT admits to transferring Marks' property in 2006, and failed to provide Marks with the required RESPA notice at that time. See NCLT's Memorandum of Law at p. 5: 1-11. If a "hold" was placed on the loan, why was it transferred? The loan was in active litigation and default, why offer it as a "line of credit? NCLT appears not only to act in bad faith, to boldly act in bad faith. In stead of offering a good faith defense in the related case, NCLT wrongfully transferred Marks' property causing irreparable harm to her family, self esteem, employability among other things. Marks' claims are viable and this Court can grant Marks relief on each and every claim.

### NCLT'S STATEMENT OF FACTS ARE INTENTIONALLY ERRONEOUS

NCLT, clearly explain to this in their statement of facts how they systematically, along with their many sub-prime partners in crime, entice, deceive and willfully defraud a homeowner who is not "mortgage savvy" into numerous bad faith refinancing that benefit the Bank. As is clear and evident at Page 3 of NCLT's Statement of Facts, they took a home from $92,000 and most recently OCWEN has demanded in excess of $600,000 for the same property over a period of about 2 years. Plaintiff has not, and invites Defendants to provide the ACTUAL cash amount she received verses the equity, and other fees which NCLT, along with Home 123 extracted from her home in an amount estimated to be in excess of $250,000 including suspicious fees" for their employee Tom Chicoine. Tom Chicoine, who may have extracted fees from BOTH New Century AND Home 123 for the same loan, per their instruction and approval, also included FEES in excess of $60,000 for refinancing within 2 years, fees which are NOT explained or clearly defined to the debtor at ANY time during the transactions. Plaintiff alleges the amounts provided by NCLT's are not accurately reflected here, nor presented in good faith. If NCLT had in fact transferred the subject mortgage to DB or any other party why was not Marks timely provided the RESPA required notices? The matter had been in litigation long before April

2, 2007 and had NCLT had any intention to act in good faith and follow the law, NCLT had ample opportunity and time to do so.

NCLT was well aware she could not afford to pay the misrepresented the terms of the loan. NCLT through it's representative Tom Chicoine offered Plaintiff loan signing jobs, which Chicoine claimed would make her an additional $1,000 per month, jobs that never materialized but Plaintiff believes that "promised" income was used to create the qualifying income for the loan to which Plaintiff complains. Plaintiff has received Judgment against Tom Chicoine in the amount of $25,000 for his crimes in this matter. Crimes enabled and approved by NCLT. See, Marks Decl. Ex. C. Plaintiff's refinancing history is irrelevant here, except it began with a NEW CENTURY loan and ended with a NEW CENTURY loan. Plaintiff most certainly was not aware that she was defrauded in the 2004 loan, but is certain a forensic audit will prove this to be true. NCLT so easily dupe Marks, they decided to "go all out" and just take everything left and leave her on the street with her handicapped son. These are not the acts of a lender who practices in good faith.

As is well documented by NCLT in its Motion to Dismiss, NCLT was well aware of the history of loan modifications, enticed Marks into yet another loan mod, promised her substantial additional income and fraudulently represented that it was in fact Home 123 and now seeks to deny Plaintiff any relief what so ever from these bold and blatant bad faith acts. Furthermore, in the related litigation against New Century and Chicoine, neither defendant could or would provide "loan documents" in good faith. New Century nor Home 123 attempted to make restitution, loan modification or other good faith act. New Century and Home 123 claimed to do a loan modification, and while Marks awaited a appraiser, NCLT served her with pleadings in the related matter, clear bad faith. Instead, NCLT attempted to act outside the law, Federal courts and attempt to enable OCWEN and DB to steal her property from her.

As is supported by NCLT's Motion to dismiss, NCLT ADMITS it transferred the

loan to "DB" as a "line of credit" on or about April 2, 2007 – without resolution to the Related Matter in Federal Court and with full knowledge that the loan was in default, active litigation and dispute as of July 2006. This "line of credit" was affected with NCLT's full knowledge that the Subject Property's mortgage was in active litigation and default. Furthermore, NCLT FAILED to provide Marks with NOTICE OF ANY KIND of transfer to DB or any other entity on April 14, 2006. This is a clear violation of RESPA, admitted by NCLT. Plaintiff was NOT notified of transfer until April 2, 2007 as is clearly outlined in the related case USDC NDC 07-2133. The Notice of Transfer dated April 2, 2007 stated it was transferred to OCWEN effective that date. Transfer to DB was not noticed until April 11, 2007, which is admitted by OCWEN in the related case USDC NDC 07-2233. Federal violations are clearly admitted here by NCLT.

As is CLEARLY supported by NCLT's Motion to dismiss at page 5 and 6, Marks proof of claim #4269 was filed on **April 25, 2007** along with her motion to exclude her property from bidding. See Marks Decl. Exhibit F attached hereto. Marks' claim was timely filed and continues in full effect as established by Exhibit F attached hereto. Despite this Court's Order, Plaintiff did NOT receive notice of any kind listing her property, nor any notice dismissing her claim specifically. Plaintiff did receive notices none of which listed her property as Defendants allege in their Motion to Dismiss. No liquidation papers received by Plaintiff listed her property. No notice was received by Plaintiff verifying that her claim was "dismissed" as alleged by NCLT. See Exhibit Marks Decl Exhibit B. Additionally, DB had an adversary proceeding filed in this Court against NCLT during the commencement of this Chapter 11 proceeding and the related litigations were pending. NCLT claims to have transferred her primary residence mortgage to DB in 2006, Plaintiff has NEVER, to date, received any Notice of Transfer for that date nor has her loan been serviced since 2006. The other refinances are not the subject loans of this litigation and information relating to them completely irrelevant here, with the exception of the NCLT loan in 2004. As NCLT admits in its Motion to Dismiss, it was aware of

numerous refinancing, solicited Marks, and chose to steal equity from her home received numerous prepayment penalties and attempted force her into foreclosure. NCLT then attempted to fraudulently transfer her property to OCWEN ONE DAY before filing Chapter 11, failed to notify Marks of any transfer in 2006, nor notify the Court of such transfer in the related action in 2006, clear fraudulent acts in violation of numerous laws. Marks also did not receive any response to documents submitted to this Court in 2007 as evidenced by documents submitted as evidence in its Motion to Dismiss. The relevance of those documents, here is unclear. If NCLT did in fact transfer to DB on or about April 2006 – no RESPA Required Notice was provided to Marks. To date, NO DEFENDANT in any matter is "servicing" Plaintiff's loan. She has FINALLY received "copies" loan documents in NCLT's Motion to Dismiss, and questions the validity of those documents. The **FINAL** HUD-1 from the 2006 loan is not provided in evidence by NCLT. NCLT is well aware that an "estimated" HUD-1 cannot possible reflect the FINAL transaction. NCLT continues to present irrelevant, ineffective, inaccurate evidence here in an attempt to convince this Court to uphold acts that are in clear and bold violation of applicable law.

## **ARGUMENT IN SUPPORT OF OPPOSITION TO MOTION TO DISMISS**

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure should not be granted "unless plaintiffs can prove no set of facts in support of their **claim** which would entitle them to relief." *Kowal v. MCI Communications Corp., 305 U.S. App. D.C. 60, 16 F.3d 1271, 1276 (D.C. Cir. 1994); accord Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957).* The complaint is construed liberally in plaintiffs' favor, and plaintiffs are given the benefit of all inferences that can be derived from the facts alleged. *See EEOC v. St. Francis Xavier Parochial Sch., 326 U.S. App. D.C. 67, 117 F.3d 621, 624-25 (D.C. Cir. 1997); Tele-Communications of Key West, Inc. v. United States,* 244 U.S. App. D.C. 335, 757 F.2d 1330, 1334-35 (D.C. Cir. 1985).

The statute of limitation on fraud is 3 years. Plaintiff became aware of the fraudulent **transfer** of her property on or about March 27, 2007, with an alleged effective

date of April 2, 2007, in clear violation of RESPA as the document claims on its face. NCLT admits that it DID transfer the property to DB in 2006. By not providing Marks with a Notice of Transfer bearing that date, NCLT is in violation of RESPA. However, to date, Marks' loan has NOT been serviced by ANY party, not OCWEN nor DB nor New Century. Under TILA Marks is entitled to know what the amount of her loan is, the interest rate charged, the expected monthly payments and the balance due on the note. NCLT claims that amount to be in excess of $400,000 in it's Motion to Dismiss. DB has claimed arbitrary amounts in excess of $600,000 – providing no loan servicing, no explanation of fees, except illegally charged late fees, current interest rate, or any services reasonable granted to similarly situated consumers. The goal of NCLT, DB and OCWEN was to fraudulently, unlawfully and wrongfully acquire the Subject Property.

NCLT's Trustee claims Marks has no valid claim. See Marks Decl. Exhibit B, correspondence from and SIGNED by NCLT's Trustee requesting information to affect a claim. Had the claim been in fact dismissed, why would Marks receive such a form on February 10, 2009? A form that clearly explains that notice was previously sent on August 5, 2008 (which was NEVER received by Marks), AFTER the NCLT claims the October 2008 order dismissed her claim. Had NCLT transferred the Subject Property in 2006, over a year pre-petition, why would it be included in NCLT's Chapter 11 proceeding. Had NCLT transferred the property as it admits on March 27, 2007, why was this transaction not handled by the Bankruptcy Trustee at that time? NCLT's acts are in clear violation of bankruptcy laws, RESPA, and other laws. Marks begs this Court for justice. Furthermore, both NCLT and OCWEN have tainted Marks' credit report, by reporting the same loan with different loan numbers, giving the appearance that she is approximately $1,000,000,000 in debt. Upon NCLT's transfer of the loan, her credit report should have been updated to reflect the termination of the NCLT mortgage in favor of the OCWEN mortgage. Marks continues to suffer economically and emotionally at the hands of these masters of subprime bad faith

practices.

*In re Rimgale, 669 F.2d 426, 431 (7th Cir. 1982)*. At a minimum, good faith requires debtor to show an honest intention. *In re Bingham, 68 Bankr. 933, 935 (Bankr. M.D.Pa. 1987)* (citing *In re Setzer, 47 Bankr. 340, 344 (Bankr. E.D.N.Y. 1985))*. The facts required to find sufficient indicia of bad faith warranting dismissal are as varied as the number of cases raising the issue. *In re Zahniser, 58 Bankr. 530 (Bankr.D.Colo. 1986)*.

The applicability of good faith requires examination into any abuses of the provisions, purpose, or spirit of bankruptcy law and into whether the debtor honestly needs the liberal protection of the Bankruptcy Code. *In re Bingham, 68 Bankr. 933, 935 (Bankr. M.D.Pa. 1987)* (citing *In re Setzer, 47 Bankr. at 340* ) (emphasis added). *In re Lawson, 93 Bankr. 979, 986 (Bankr.N.D.Ill. 1988)* (citing 9 Collier on Bankruptcy para. 9.20 at 319 (14th ed. 1978); *In re Smith, 848 F.2d 813 (7th Cir. 1984); In re Rimgale, 669 F.2d 426 (7th Cir. 1982); In re Terry, 630 F.2d 634 (8th Cir. 1980)* [the foregoing cases involved issues of debtor's good faith]. "Unmistakable manifestations of bad faith need not be based upon a finding of actual fraud, requiring a finding of malice, scienter or intent to defraud. We simply require that the bankruptcy courts preserve the integrity of the bankruptcy process by refusing to condone its abuse." *Waldron, 785 F.2d at 941*.

Other courts agree with Waldron that neither malice nor actual fraud is required to find a lack of good faith. The bankruptcy judge is not required to have evidence of debtor ill-will directed at creditors, or that debtor was affirmatively attempting to violate the law -- malfeasance is not a prerequisite to bad faith. Rather, the court may find a lack of good faith where the debtor "used the [bankruptcy] process in a way that the underlying policy of securing an orderly and fair adjustment of the relationship between debtor and creditors could not be realized. This constitutes a lack of good faith. . . ." *In re Grieshop, 63 Bankr. 657, 663 (N.D.Ind. 1986)*. Where a debtor utilizes the automatic stay without the intent or ability to reorganize their financial affairs or to perform a realistic payment plan, they are abusing the bankruptcy system and the case must be dismissed. *In re Kinney, 51 Bankr.*

*840, 845 (Bankr.C.D.Cal. 1985).*

No matter which list of factors, or narrative indicia, any particular court may apply to determine good faith, in reaching its conclusion the "totality of circumstances" test must applied. The question to be raised is: Whether or not, under all the circumstances of the case, there has been an abuse of the provisions, purpose or spirit of the Bankruptcy Code? See *In re Smith, 848 F.2d 813, 818 (7th Cir. 1984)* (citing In re Rimgale, 669 F.2d 426 (7th Cir. 1982) and *In re Terry, 630 F.2d 634, 635 (8th Cir. 1980))*; *In re Goeb, 675 F.2d 1386, 1391 (9th Cir. 1982)*; *In re Metz, 820 F.2d 1495 (9th Cir. 1987).*

Finally, in determining debtor's lack of good faith, the court must attempt to draw an inference as to debtor's motive from the effect achieved. This process has been described as follows:

"Much of the case law on good faith draws heavily upon the time-honored method of analyzing and establishing a nexus between cause and effect. Long a modus habilis not only in bankruptcy but in criminal and tort law and in virtually any legal inquiry where intent is the issue, this sort of a posteriori inquiry permits courts to work backward from effect to cause -- to reason, that is, that if the probable effect of a reorganization plan is to treat unfairly of creditors, then the probable cause of the filing was bad faith. The judicial exercise of discovering antecedent intent through a study of subsequent conduct in not unknown in this Court."

*In re Khan, 34 Bankr. 574, 575 (Bankr.W.D.Ky. 1983)* (debtor's petition dismissed for bad faith where debtor filed for the purpose of evading a legal duty to pay a lifetime support contract debtor-physician entered to avoid a personal injury lawsuit); see also *In re Setzer, 47 Bankr. 340 (E.D.N.Y. 1985)* (debtor's petition dismissed for bad faith where debtor's bankruptcy was filed to secure a litigation advantage).

The pattern of the transfer of distressed real property to a prospective "new debtor" on the eve of foreclosure is not a new scenario to bankruptcy proceedings. Most reported cases, however, deal with Chapter 11 debtors, and usually the transferee is a

previously dormant corporation or a newly created entity. These circumstances differ from various cases -- but the purpose of the filing, and the resultant abuse, is the same.

Another important, early, and often cited, case describing the "new debtor syndrome" is *In re Victory Construction Co., Inc., 9 Bankr. 549 (Bankr.C.D.Cal. 1981).* The *Victory* decision contains an historical description of facts too detailed to report here, but in essence, debtor, an earlier formed corporate shell, was reactivated by its principal to purchase a parcel of highly encumbered real property. Debtor, having no funds of its own upon reactivation, was required to borrow funds from its principal in order to make its purchase. No note was prepared to evidence the loan, and no arrangements were made with respect to repayment of the loan. Marks alleges the New Century – DB – OCWEN scheme is simply a new twist to an old bad faith act.

"The purchase of a quitclaim to fully encumbered property on the eve of foreclosure, with the intent to use Chapter 11 to delay the secured creditors in enforcement of their rights, is inconsistent with the purpose, spirit, and intent of the statute, under the facts and circumstances here presented".

The Appellate Panel found that the transfer of the property to new debtor was necessary both for its creation and for the filing of its petition, and in addition, the filing was done for the purpose of preventing foreclosure on the heavily encumbered property. The court further said:

"Where the petition is filed to subvert the legitimate rights of creditors in the absence of any reasonable expectations that the debtor can successfully reorganize, there is no basis for access to Chapter 11 and the protective machinery of the automatic stay."

And finally, in a similar case, *In re American Property Corporation, 44 Bankr. 180 (Bankr.M.D.Fla. 1984)*, title was taken to undeveloped real property by a previously dormant corporation on October 13, 1983. At the time of the purchase debtor knew that the property was subject to foreclosure by the lien holder. Between the time the property was acquired and the filing of the bankruptcy petition in July 1984, the debtor attempted to

have it rezoned, but these efforts were unsuccessful. At the time of the filing, the undeveloped property was the principal asset of the debtor. Debtor, said the court, "does not conduct any business in the orthodox sense other than speculating in real estate." *Id. at 182.* In concluding that this case was filed without good faith, Chief Judge Paskay, declared that:

"Clearly, bad faith is shown if the purpose of a Chapter 11 debtor is to hold a single asset 'hostage' in order to speculate that such asset may increase in value in order to recover its original investment at the creditor's risk. Thus, courts have looked to whether the debtor names any unsecured creditors . . .; whether the debtor has any assets to protect;

and whether the debtor is engaged in an ongoing business, or whether the debtor is attempting to embark on a speculative real estate venture."

*Id. at 182* (citations omitted).

While the Bankruptcy Code is silent regarding the burden of proof as to dismissals, courts have consistently held that once a debtor's good faith is in issue, the debtor bears the burden of proving the petition was filed in good faith. *In re Bingham, 68 Bankr. 933 (Bankr.M.D.Pa. 1987)* (citing *In re Setzer, 47 Bankr. 340 (Bankr.E.D.N.Y. 1985))*; *In re Holi-Penn, Inc., 535 F.2d 841, 844 (3d Cir. 1976).* Further, some courts have held that to show good faith and changed circumstances in serial or successive filing matters, the burden is on the debtor to prove with "detailed testimony" and "convincing evidence" his entitlement to the relief sought. *In re Pryor, 54 Bankr. 679, 681 (Bankr.D.S.C. 1985)* (quoting *In re Bolton, 43 Bankr. 48 (Bankr.E.D.N.Y. 1984))*; see also *In re White, 72 Bankr. 169 (Bankr.D.S.C. 1986)*; *In re McElveen, 78 Bankr. 1005, 1007 (Bankr.D.S.C. 1987).*

With respect to the burden of proof in establishing debtor's good faith in Chapter 11 proceedings, and more particularly "new debtor syndrome" cases, numerous courts have followed the holding of *In re Yukon Enterprises, Inc., 39 Bankr. 919, 921 (Bankr.C.D.Cal. 1984),* that "once the creditor establishes that the transfer of the distressed property to the

debtor was in close proximity to the filing of the case, a prima facie showing of bad faith has been shown, thus creating a rebuttable presumption of bad faith." Where a prima facie showing has been made the burden is thereafter on the debtor to establish good and sufficient reasons why relief should not be granted. See also *In re Rye, 54 Bankr. 180, 182 (Bankr.D.S.C. 1985); In re Nelson, 66 Bankr. 231, 234 (Bankr.D.N.J. 1986).*

It is well settled throughout the circuits, including the Ninth, that cause" for relief from stay under § 362(d)(1) may include a finding by the Court that debtor's petition was filed in bad faith. See *In re Arnold, 806 F.2d 937, 939 (9th Cir. 1986); In re Kemble, 776 F.2d 802, 807 (9th Cir. 1985); Matter of Little Creek Development Co., 779 F.2d 1068 (5th Cir. 1986); In re Loeb Apartments, Inc., 89 F.2d 461 (7th Cir. 1937); In re Albany Partners, Ltd., 749 F.2d 670 (11th Cir. 1984); In re Natural Land Corp., 825 F.2d 296 (11th Cir. 1987); In re Phoenix Piccadilly, Ltd., 849 F.2d 1393 (11th Cir. 1988); In re Yukon Enterprises, Inc., 39 Bankr. 919, 921 (Bankr.C.D.Cal. 1984); In re Victory Construction Co., 9 Bankr. 549 (Bankr.C.D.Cal. 1981).*

Bankruptcy Rule 9011, *11 U.S.C. Rule 9011*, provides, among other things, that the signature of an attorney or party to a petition, pleading or motion constitutes a certificate that to the best of such attorney or party's knowledge, information or belief, "formed after reasonable inquiry," that such document is "well grounded in fact and is warranted by existing law . . .; and that it is not interposed for an improper purpose, such as to harass, to cause delay, or to increase the cost of litigation." Where the Court determines that such document is signed in violation of Rule 9011, it "shall impose upon the person who signed it, the represented party, or both, an appropriate sanction . . . including reasonable attorney's fees." The rule in the Ninth Circuit requires that "A bankruptcy court must impose sanctions when it finds a violation of Bankruptcy Rule 9011". *In re Webre, 88 Bankr. 242, 245 (9th Cir. BAP 1988) (citing In re Lewis, 79 Bankr. 893, 896 (9th Cir. BAP 1987)).*

As set forth in *In re Eighty South Lake, Inc., 63 Bankr. 501 (Bankr.C.D.Cal.*

*1986), aff'd, 81 Bankr. 580 (9th Cir. BAP 1986)*, the responsibility for the filing of a bad faith petition must be jointly borne by both the debtor and its attorney. In making a determination whether sanctions are appropriate, the focus must be whether debtor and counsel first made "reasonable inquiry" that the filing, or the issue raised by the filing, was "well grounded in fact" and "warranted by existing law or a good faith argument for the extension, modification or reversal of existing law," and that the filing was not "interposed for any improper purpose such as to harass, to cause delay, or to increase the cost of litigation. *Id. at 507.*

An objective standard is to be used to determine whether a party or its attorney has acted with an improper purpose. *In re McKissie, 103 Bankr. 189, 194 (Bankr.N.D.Ill. 1989)* (citing *Thornton v. Wahl, 787 F.2d 1151 (7th Cir. 1986)*, cert. denied, *479 U.S. 851, 107 S. Ct. 181, 93 L. Ed. 2d 116 (1986))*. But, Rule 9011 should not be used to "chill an attorney's enthusiasm or creativity in pursuing factual or legal theories." *In re Villa Madrid, 110 Bankr. 919 (9th Cir. BAP 1990)*(citing *In re Lewis, 79 Bankr. 893, 896 (9th Cir. BAP 1987))* (other citations omitted). The relevant inquiry with respect to sanctions where lack of good faith at the filing is in issue is "not whether the . . . bankruptcy petition was filed in bad faith, but rather whether the [debtor] knew, or after reasonably diligent inquiry should have known, that the filing of the petition would be in bad faith." *Villa Madrid, 110 Bankr. at 922.*

The Complaint of Marks should be upheld in the interest of Justice and according to law. Marks has provided sufficient evidence to support her claim that NCLT has effectively, wrongfully and willfully defrauded her. It if furthermore clear, by evidence presented here that NCLT cannot prove that it has not, and has effectively support several of Marks' claims alleged herein.

## CONCLUSION

Plaintiff continues to seek relief as prayed in her complaint, immediate dismissal of the fraudulent transfer to DB or any other party; quiet title to Plaintiff free and clear or encumbrance or indebtedness to NCLT and the fraudulent transfer it admits to enabling. Plaintiff prays for immediate removal of derogatory reports to credit bureaus of New Century and OCWEN on behalf of DB relating to the SAME loan with two different loan numbers. Dismissal of NCLT's Motion with prejudice. Sanctions in an amount this Court deem just, fair and proper. Plaintiff seeks an end to this NIGHTMARE that has caused irreparable harm to herself, her family, her health, her self-esteem, employability and financial ruin. While no sum of money can restore time lost defending herself in numerous litigations as the direct and proximate result of the bad faith acts of NCLT, Plaintiff deserves immediate relief. This Court has the power to make it so. Plaintiff prays this Court rule in her favor. Plaintiff will suffer manifest injustice if this Court sees fit to rule in favor of NCLT, even in part.

DATED: April 26, 2009                    Respectfully Submitted,

_Leslie Marks_
Leslie Marks, in Pro Se