UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | : | CHAPTER 11 |
| | : | (Jointly Administered) |
| **NEW CENTURY TRS HOLDINGS, INC**,: | | |
| *et al.* | : | Case  No. 07-10416 (KJC) |
| Debtors | : | |
| | : | |
| **LESLIE MARKS,** | : | Adv. Pro. No. 09-50244 (KJC) |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| **NEW CENTURY TRS HOLDINGS, INC**,: | | |
| *et al.* | : | Re: docket nos. 53, 56 |
| | : | |
| Defendants | : | |

MEMORANDUM [1]

BY: KEVIN J. CAREY, UNITED STATES BANKRUPTCY JUDGE

Currently before the Court for consideration are the following pleadings filed by Leslie

Marks (the "Plaintiff") in the above-captioned adversary proceeding: (1) the Request for Stay of

Dismissal and Status Conference (Adv. Docket No. 53) (the "Request to Stay Dismissal"), and

(2) Ex Parte Application for Temporary Restraining Order and Preliminary Injunction (Adv.

Docket No. 56) (the "TRO Request").  The New Century Liquidating Trust (the "Trust"), by and

through Alan M. Jacobs, the Liquidating Trustee (the "Trustee") filed responses objecting to the

---

[1] This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a).  This is a core proceeding pursuant to 28 U.S.C. 157(b)(1) and (b)(2)(B).

relief sought by the Plaintiff.[2]  (Adv. Docket Nos. 54, 63).  An evidentiary hearing to consider the

Requests was held on February 24, 2011.  For the reasons provided below, the Plaintiff's Request

to Stay Dismissal and the TRO Request are denied.

### Background

The Debtors filed their chapter 11 bankruptcy petitions on April 2, 2007.  On April 25,

2007, the Plaintiff filed a secured/priority claim against the Debtors in the amount of $495,000

(the "Proof of Claim").  An order dated May 7, 2008 expunged the Proof of Claim pursuant to

the Debtors' Eighteenth Omnibus Objection to Claims. (Main Case Docket No. 6642).

On March 3, 2009, the Plaintiff commenced an adversary proceeding by filing a

complaint against the Debtors asserting claims for (1) fraudulent conveyance, (2) violation of

chapter 11 of the Bankruptcy Code, (3) fraudulent misrepresentation and negligence, (4)

violation of the Truth-in-Lending Act, 15 U.S.C. §1601 *et seq.*, (5) violation of Business and

Professions Code Section 17200 *et seq.*, (6) violation of RESPA, 12 U.S.C. §2605, and (7) quiet

title to real property against all defendants (collectively, the "Causes of Action").  The Causes of

Action arise out of a loan transaction between the Plaintiff and Debtor Home123 Corporation

entered into on or about March 26, 2006.[3]

---

[2]On November 20, 2009, the Court entered an Order confirming the Modified Second Amended Joint Chapter 11 Plan of Liquidation (the "Modified Plan") (D.I. 9905).  The Modified Plan adopted, ratified and confirmed the New Century Liquidating Trust Agreement, dated as of August 1, 2008, which created the Trust and appointed Alan M. Jacobs as Liquidating Trustee of New Century Liquidating Trust and Plan Administrator of New Century Warehouse Corporation.

[3]Copies of the loan documents are not part of the record made on February 24, 2011, but the parties' filings indicate (and there is no dispute) that the loan transaction involved a promissory note in the amount of $495,000 signed by the Plaintiff in favor of Home123 Corporation, which was secured by a deed of trust against the Plaintiff's real property located in Oakland, California.  The property has since been the subject of a foreclosure sale.

On April 17, 2009, the Trustee filed a Motion to Dismiss the Adversary Proceeding

Complaint pursuant to Fed.R.Civ.P. 12(b)(6) (the "Trustee's Motion to Dismiss").  On April 28,

2009, the Plaintiff filed a memorandum of law in support of her opposition to the Trustee's

Motion to Dismiss and request for sanctions.  The Trustee filed a reply memorandum of law, and

on June 2, 2009, a Notice of Completion of Briefing regarding the Trustee's Motion to Dismiss

was filed. (Adv. Docket No. 17).

On August 23, 2010, the Trustee and the Plaintiff entered into a Settlement Agreement.

(Trustee Ex.7).  Under the Settlement Agreement, the Trustee agreed to pay a Settlement Sum of

$80,000 "in full and final satisfaction of the Causes of Action and any other claim(s) that

[Plaintiff] may have against the Debtors or the Trust."  (*Id.* at p.5).  The Plaintiff acknowledged

that the Settlement Sum was paid to her.  (Tr. at 38).

On September 2, 2010, the Plaintiff filed a Notice of Dismissal, asking that the adversary

proceeding "be dismissed with prejudice in accordance with the terms of the Settlement

Agreement."  (Adv. Docket No. 52).  On the same date, the adversary proceeding was closed.

On October 19, 2010, the Plaintiff filed the Request to Stay Dismissal, arguing that

dismissal of her adversary proceeding should be stayed because the Trustee "violated the

Settlement Agreement by not expunging negative credit reporting information as agreed."

(Request to Stay Dismissal, ¶3).[4]  The Trustee filed an objection to the Request to Stay Dismissal

---

[4]I treat the Request to Stay Dismissal, in part, as a motion to reopen this adversary proceeding. *See Sun Healthcare Group, Inc. v. Mead Johnson Nutritional (In re Sun Healthcare Group, Inc.),* 2004 WL 941190, at *1 (Bankr.D.Del. April 30, 2004) (Bankruptcy Code Section 350 applies only to reopening bankruptcy cases, not adversary proceedings.  "Adversary proceedings in bankruptcy cases are procedurally analogous to civil actions filed in district courts.  A district court does not need an independent basis to reopen a civil proceeding before considering a motion for relief from a judgment pursuant to Rule 60(b) of the Federal Rules of Civil Procedure.  Rather, such a motion is deemed a continuation of the original proceeding.")

on the same day.  (Adv. Docket No.  54).

On November 1, 2010, the Plaintiff filed the TRO Request to prevent "parties [and] their agents, servants, employees, officers, representatives, successors, partners, assigns, and any and all persons acting in concert or participating with them" from taking any actions related to the "wrongful foreclosure" of her real property.  On December 14, 2010, the Trustee filed a response to the TRO Request, arguing that the Court does not have jurisdiction to hear it.  (Adv. Docket No. 63).

## Discussion

1.    The Request to Stay Dismissal

The Plaintiff seeks to stay dismissal of her adversary proceeding because she alleges that the Trustee has violated the terms of paragraph 4 of the Settlement Agreement by failing to send a letter as required to the credit reporting agencies.  The Trustee responds that he has complied with the terms of the Settlement Agreement.

A voluntary agreement to settle a civil controversy is an enforceable contract.  *Marino v. Cross Country Bank*, 2007 WL 1810485, *2 (D.Del. June 25, 2007).  *See also Aksoy v. Selectrucks of America, LLC*, 2009 WL 2992554, *2 (D.Del. Sept. 18, 2009) ("[A]n agreement to settle a lawsuit, voluntarily entered into, is binding upon the parties, whether or not made in the presence of the court, and even in the absence of a writing.").[5]  Contract interpretation is a matter of state law and, accordingly, bankruptcy courts will rely on applicable state law in construing a contract's terms.  *Tesler v. Certain Underwriters at Lloyd's, London (In re Spree.com Corp.)*,

---

[5]California law, which the Plaintiff argues is applicable here, also provides that interpretation of a settlement agreement is governed by the same principles applicable to any other contractual agreement. *Winet v. Price*, 4 Cal.App.4th 1159, 1165 6 Cal.Rptr.2d 554, 557 (Cal.App. 4 Dist. 1992).

2002 WL 1586274, *7 (Bankr.E.D.Pa. June 20, 2002) citing *In re Karfakis*, 162 B.R. 719, 725 (Bankr.E.D.Pa. 1993).

The Settlement Agreement does not include a choice of law provision.  At the Court's invitation, the parties submitted post-hearing letter briefs about which state's law applies to the Settlement Agreement.  The Plaintiff argued that California law should be applied to this proceeding, while the Trustee argues that the Settlement Agreement should be governed by Delaware law.  Neither party, however, offered any analysis of how the asserted applicable law is to be applied specifically to the facts before me.

This Court must apply the Delaware choice of law rules to determine which state law applies here.  *Burtch v. Dent (In re Circle Y of Yoakum, Texas)*, 354 B.R. 349, 359 (Bankr.D.Del. 2006) citing *In re PHP Healthcare Corp.*, 128 Fed. Appx. 839, 843 (3d Cir. 2005)(applying the choice of law rules of the state in which the bankruptcy court sits).  However, before engaging in a choice of law analysis, a court should consider whether there exists a true conflict between the application of Delaware and California law.  *Williams v. Stone*, 109 F.3d 890, 893 (3d Cir. 1997).

Delaware law provides that when the contract is clear and unambiguous, the courts will give effect to the plain meaning of the contract's terms and provisions.  *Osborn v. Kemp*, 991 A.2d 1153,1159-60 (Del. 2010).  If a court may reasonably ascribe multiple and different interpretations to a contract, it will find that the contract is ambiguous.  *Id.* at 1160.  If a contract is ambiguous, the Delaware court will apply the doctrine of *contra proferentem* against the drafting party and interpret the contract in favor of the non-drafting party.  *Id.*  Also, Delaware Courts may hear parol evidence to resolve a contractual term that is ambiguous. *Peden v. Gray*, 886 A.2d 1278, 2005 WL 2622746, *2 (Del. Oct. 14, 2005).

Similarly, "plain language" remains an important principle of contract interpretation in

California Courts.  *Griffin Dewatering Corp. v. Northern Ins. Co. of New York*, 176 Cal. App. 4th

172, 204, 97 Cal.Rptr.3d 568 , 592 (Cal. App. 4 Dist. 2009).  If possible, the parties' intent is

inferred solely from the written provisions of the contract.  *Rosen v. State Farm General Ins. Co.,*

30 Cal.4th 1070, 1074, 70 P.3d 351, 363 (Cal. 2003).  If the language is clear and explicit, it

governs.  *Id.*

California courts will hear parol evidence, however, to construe an agreement if its

language is ambiguous.  *Winet*, 4 Cal.App.4th at 1165.  California courts use a two-step process

to determine whether to admit parol evidence:

> First, the court provisionally receives (without actually admitting) all credible
> evidence concerning the parties' intentions to determine "ambiguity," i.e., whether
> the language is "reasonably susceptible" to the interpretation urged by a party.  If
> in light of the extrinsic evidence the court decides that language is "reasonably
> susceptible" to the interpretation urged, the extrinsic evidence is then admitted to
> aid in the second step - - interpreting the contract.

*Id.*

Here, the Plaintiff does not allege that the language of the Settlement Agreement is

ambiguous, so the matter before me does not present a true conflict of law issue.[6]   Instead,

the Plaintiff argues that the letter sent by the Trustee to credit reporting agencies, as she requested

and as set forth in the Settlement Agreement, was inadequate because it does not quiet title to her

---

[6]However, even assuming there is a true conflict, Delaware law is applicable to this matter
pursuant to the "most significant relationship" test of the Restatement (Second) Conflict of Laws, §188.
*See Carr v. New Century TRS Holdings, Inc. (In re New Century TRS Holdings, Inc.),* slip op. at 6-8,
Adv. No. 09-52251 (Bankr.D.Del. May 10, 2011) (The subject matter of the Settlement Agreement is the
full and final resolution of an adversary proceeding pending in this Court, related to the New Century
bankruptcy case, which is also pending in this Court.  Delaware, as the forum state, has a natural interest
in an agreement resolving litigation pending (and expending judicial resources) in a Delaware
Bankruptcy Court.  The parties would be justified in expecting that Delaware law would govern an
agreement to settle a Delaware adversary proceeding.  Moreover, applying Delaware law to an agreement
that settles a Delaware proceeding fosters certainty, predictability, and uniformity.).

property.  The Plaintiff attached a single page to the Request to Stay Dismissal which includes

language from a prior draft of the Settlement Agreement:

> 5.      The Debtor also agrees to expunge any adverse credit reporting it has made on [Plaintiff's] credit report relative to the New Century/Home123 mortgage loans within twenty (20) calendar days of the date that this Settlement Agreement is fully executed by the Parties and will provide [Plaintiff], at the address set forth below, with a copy of documents evidencing such reporting to all credit agencies.

(Request to Stay Dismissal, Ex. A).  This is not the language ultimately adopted in the Settlement

Agreement, but only draft language proposed by the Plaintiff, to which the Trustee never agreed.

(Trustee Ex. 3, email dated Friday, August 20, 2010 at 3:35 pm, attaching proposed language

inserted as paragraph 4 of the Settlement Agreement.)  The final version of the Settlement

Agreement signed by the parties provides:

> 4.      Within twenty (20) business days of the date that this Settlement Agreement is fully executed, the Trust agrees to send a letter to each of the four (4) credit reporting agencies that the Debtors reported to prior to the Petition Date. Such letter shall state that the Debtors transferred the loan Marks obtained from Home 123 Corporation in March of 2006 and consequently no amounts are due to Home 123 Corporation, any other Debtor, or the Trust on account of such loan.  After each letter is sent, the Trustee will provide Marks, at the address set forth below, with a copy of each of the referenced letters.

(Trustee Ex. 7, ¶4).  The Trustee complied with his obligations by sending a letter stating exactly

what was required in paragraph 4 of the Settlement Agreement to four credit reporting agencies.

(Trustee Ex. 18).

Even if I concluded that paragraph 4 of the Settlement Agreement was determined to be

ambiguous and I considered the parol evidence presented at the hearing, the conclusion that the

Trustee has complied with the parties' mutual agreement is inescapable.  The parties specifically

negotiated the terms of paragraph 4.  When the Trustee asked the Plaintiff for more information

about her request for a letter to the credit agencies, the Plaintiff wrote that:

> One of the major problems with this litigation was that New Century/Home 123 reported that I owed $400,000 on my credit report and it was never expunged. New Century did service the loan.
>
> When the loan transferred to DB, DB also claimed I owed $400,000 so now it appears on my credit [report that] I am $800,000 in debt for the same loan.
>
> Now they have transferred [the loan] to a third party and it puts me over $1,000,000 in debt for the same loan (this amount is approximate not exact for the purpose of explanation).

(Trustee Ex. 4, email dated Friday, August 20, 2010 4:59 pm).[7]   The Trustee responded by advising that he could not report to the credit agencies as the Debtors were able to do when they were in business pre-bankruptcy, but he could "send a letter to the credit agencies informing them of the bankruptcy and that the loan was transferred and money is no longer owed to Home123." (*Id.*, email dated Friday, August 20, 2010 at 2:51 pm; *see also* Tr. at 119-20). There is nothing in the Plaintiff's request or the Trustee's response indicating that the Trustee would (or could) "quiet title" to the Plaintiff's real property.  In fact, the Plaintiff's original draft language for the paragraph in question did not ask the Trustee to quiet title to her property.

The Plaintiff has not proven that the Trustee violated the terms of the Settlement Agreement.  The Request to Stay Dismissal will be denied.

2.      The TRO Request

In the introduction to the Plaintiff's Memorandum of Points and Authorities in Support of [a] Temporary Restraining Order, the Plaintiff explains that she "makes this application to prevent any parties [and] their agents, servants, employees, officers, representatives, successors,

---

[7]The time listed on the emails appears to be in error, even accounting for the time difference between New York and California.  However, I cite to the time for each email as reported for ease of reference since all of the emails are dated Friday, August 20, 2010.

partners, assigns, and any and all persons acting in concert or participating with it, from harassing

her by telephone and enjoining them from initiating foreclosure procedures or unlawful detainer

procedures of any kind with relation to the Plaintiff's primary residence . . . [in] Oakland, CA."

The Plaintiff does not allege that any of the Debtors or the Trust has taken any such action

against her real property.  The Plaintiff argues that there are no properly recorded assignments of

the deed of trust securing her Note in the Recorder's Office for Alameda County, California.  She

seeks adjudication of the rights of non-debtor parties who are currently attempting to exercise

state law remedies in the California courts.[8]

The Trustee opposes the TRO Request and argues that this Court does not have

jurisdiction to hear it.  The Trustee prepared an affidavit based upon his review of the Debtors'

books and records stating that, prior to the Debtors' chapter 11 bankruptcy filing, the Plaintiff's

loan with Home123 Corporation was transferred to a third party. (Trustee Ex. 22; *See also* Tr. at

133-35).  I agree that this Court does not have jurisdiction to issue a TRO or preliminary

injunction against non-debtor parties regarding loans in which the Debtors had no interest as of

the commencement of the bankruptcy case.  *See Scott v. Aegis Mortgage Corp. (In re Aegis*

*Mortgage Corp.)*, 2008 WL 2150120, *5 (Bankr.D.Del. May 22, 2008) (A declaration as to the

rights of parties under a mortgage that was transferred prior to the bankruptcy filing will not alter

the debtors' rights, liabilities, options or freedom of action because the debtors are no longer a

party to it.). The relief sought by the Plaintiff will not conceivably have any effect on the

---

[8]At the hearing, counsel for TRA Partners, LLC ("TRA") appeared telephonically and indicated
that TRA was the purchaser of the Plaintiff's real property at a foreclosure sale that occurred on in
October 2010. (Tr. at 16).  TRA is not a party to the adversary proceeding, but argued at the hearing that
TRA opposes the TRO Request and asks that any disputes between the Plaintiff and TRA regarding the
Plaintiff's real property be heard and decided by a court in California.  (Tr. at 154).

Debtors' bankruptcy estate or the Trust. *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)[9]

("The usual articulation of the test for determining whether a civil proceeding is "related to" a

bankruptcy case is whether the outcome of that proceeding could conceivably have any effect of

the estate being administered in bankruptcy...."). *See also In re Resorts Int'l, Inc.*, 372 F.3d 154,

168-69 (3d Cir. 2004)(Post-confirmation, a bankruptcy court's jurisdiction is limited to matters

in which "there is a close nexus to the bankruptcy plan or a proceeding, as when a matter affects

the interpretation, implementation, consummation, execution, or administration of a confirmed

plan or incorporated litigation trust agreement).

Because this Court does not have jurisdiction, it follows that the TRO Request is not

appropriate and must be denied.


## Conclusion

The record in this case does not support a finding that the Trustee failed to comply with

the terms of the Settlement Agreement.  Moreover, for the reasons set forth above, I conclude

that this Court does not have jurisdiction to hear the TRO Request.  Therefore, the Request to

Stay Dismissal and the TRO Request are denied.

---

[9]While *Pacor* was overruled on other grounds by *Things Remembered, Inc. v. Petrar*, 516 U.S. 124, 134-35 (1995)(Stevens, J. concurring), the *Pacor* test for "related to" jurisdiction was discussed favorably by the U.S. Supreme Court in *Celotex Corp. v. Edwards*, 514 U.S. 300, 308, 115 S.Ct. 1493, 1499, 131 L.Ed.2d 403 (1995), and in footnote 6 of *Celotex*, the Supreme Court noted that - - as of that time - - eight other circuit courts had adopted the *Pacor* test with little or no variation.

An appropriate order follows.


BY THE COURT:


_____
KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

Dated: May 10, 2011